704 So.2d 900 (1997)
AETNA CASUALTY & SURETY CO., Plaintiff  Respondent,
v.
CONTINENTAL WESTERN INSURANCE CO., Defendant  Applicant.
No. W97-206.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1997.
*901 Steven D. Crews, Natchitoches, John W. Perry, Jr., for Aetna Casualty & Surety Company.
David A. Hughes, Alexandria, for Continental Western Insurance Company, et al.
Caldwell Roberts, John M. Madison, Jr., Shreveport, for Unknown "Other" Defendant.
Before DOUCET, C.J., and YELVERTON and SAUNDERS, JJ.
YELVERTON, Judge.
Continental Western Insurance Co.'s (Continental) exceptions of lack of personal jurisdiction and insufficient service of process were overruled by the trial court. Continental applied for writs to this court. Due to the nature of the issues presented, we granted a writ to call the record up for full review.

Factual and Procedural History
Truman and Bessie Oxley, husband and wife, filed suit on November 18, 1991, for damages arising out of an electrical accident that occurred while Truman was working on an electrical transformer manufactured by B & B Transformer Company, Inc. (B & B).
The following four persons were among the defendants sued by the Oxleys:
(1) B & B, a Kansas corporation doing business in Louisiana.
(2) Continental Western Insurance Company, B & B's insurer, a foreign insurance company domiciled in Iowa and not authorized to do business in Louisiana but actually insuring individuals under a policy with nationwide coverage who do business in Louisiana.
(3) J.D. Electric Company, Inc. (J.D.), a Louisiana Corporation with its principal place of business in Shreveport, LA.
(4) Aetna Casualty and Surety Company (Aetna), J.D.'s insurer, a foreign insurance company domiciled in Connecticut and authorized to do and actually doing business in Louisiana.
Other defendants were sued, but they will be mentioned only where necessary.
Continental denied that its policy with B & B covered the injuries sustained by the Oxleys. On motion of the Oxleys, in response to a request by counsel for Continental, Continental was dismissed from the Oxley suit without prejudice. Subsequently, a cross-claim was filed by J.D. and Aetna against B & B and another defendant, Arkansas Transformer Sales Company, Inc. (ATS).
The case went to trial, and the final judgment on the main demand was in favor of the Oxleys. J.D. and Aetna were assigned 5% liability, B & B was assigned 25%, and the remaining liability was assigned to other defendants. J.D., B & B, and ATS were held liable in solido for 40% of the damages. The damages were totaled at $3,575,000.00. On the cross-claim, judgment was in favor of J.D. and Aetna and against B & B and ATS in the amount of $1,243,361.53.
Through post-trial negotiations, Aetna settled with the Oxleys for $1,483,000.00. As additional consideration, Aetna was contractually assigned all of the Oxleys' rights against all other defendants, including B & B and Continental. By making that settlement payment, Aetna became subrogated to J.D.'s rights. Further, by contract Aetna released B & B under the cross-claim in exchange for all rights of B & B against Continental for indemnity and for Continental's failure to defend B & B.

The Present Controversy
Now, Aetna brings suit against Continental praying in part for the following relief:
1) A judgment ordering Continental to pay its limits of $500,000.00, plus interest and costs, as provided in the supplementary payments provision of its policy of insurance, or alternatively for the full amount of the judgment against its insured, B & B, in *902 the amount of $1,243,361.53, together with interest and costs; and
2) Penalties and attorney's fees provided by Louisiana law.
In response, Continental has filed declinatory exceptions to the court's jurisdiction over the person of Continental and to the sufficiency of the service of process made on Continental. The exception to service of process was based on the claim of lack of personal jurisdiction. Because we find the assertion of personal jurisdiction is proper in this case, the exception to service of process falls.

The Law
Louisiana's long-arm statute, La.R.S. 13:3201, authorizes the exercise of personal jurisdiction by a Louisiana court to the limits allowed by constitutional due process. Superior Supply Co. v. Associated Pipe and Supply Co., 515 So.2d 790 (La.1987). Thus, our only inquiry into jurisdiction over the person of a nonresident is whether the requirements of constitutional due process have been met. Id.
Due process requires that a nonresident have certain minimum contacts with the forum state "such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This protects the nonresident's liberty interest in not being bound by the judgments of states with which it has established no meaningful "contacts, ties or relations." Id.; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985).
The contacts with the forum state must be continuous and systematic, giving support to an assertion of general jurisdiction, or the cause of action must arise out of or relate to a contact, giving support to an assertion of specific jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
A nonresident has the necessary contacts with the forum state where it has a contract with a substantial connection to the forum state. McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In the specific area of interstate contracts, where a party has reached out beyond its domiciliary state and has created continuing obligations and relationships with citizens of another state, that party is subject to the regulations and sanctions in the other state for the consequences of its actions. Burger King Corp., 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528.
The nonresident must have purposefully availed itself of the privilege of conducting activities within the forum state such that it can be said it should have reasonably anticipated being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-1240, 2 L.Ed.2d 1283 (1958), the court stated, and in Burger King Corp., 471 U.S. 462, 474-475, 105 S.Ct. 2174, 2183, the court reemphasized the following:
The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [Emphasis added].
The "purposeful availment" requirement ensures that the defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person. de Reyes v. Marine Mgt. and Consulting, 586 So.2d 103 (La.1991).
There has developed a two-part test in personal jurisdiction analysis. First, it must be shown that the defendant has established minimum contacts with the forum state-i.e., it has purposefully directed its activities at the residents of the forum state. Once that is shown, "a presumption arises that jurisdiction is reasonable and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present `a compelling *903 case that the presence of some other considerations would render jurisdiction unreasonable.'" de Reyes, 586 So.2d at 106.

a. Minimum Contacts

Continental has not established the contacts required for application of general jurisdiction. This is a specific jurisdiction case, requiring a finding that Aetna's cause of action is related to or arises out of Continental's contact with Louisiana.
Continental argues that because it is not admitted as an insurer in Louisiana, is not licensed to do business in Louisiana, does not solicit insurance business in Louisiana, does not issue policies of insurance to residents of Louisiana, does not collect or receive premiums from anyone in Louisiana, has no assets or property in Louisiana, pays no taxes in Louisiana, does not advertise or solicit business in Louisiana, and has no office, agents, or employees in Louisiana, it is not subject to the personal jurisdiction of the courts of Louisiana. However, it is not necessary that an insurer be transacting an insurance business in this state in order for the minimum contacts required by due process to exist. First Guar. Bank v. Attorneys Liability, 515 So.2d 1080 (La.1987). If the insured risk is "centered in Louisiana," and that insured risk was purposely insured against by the insurer, there is a significant contact with Louisiana. Id.
At the time of Truman Oxley's accident, Continental provided a policy of liability insurance to B & B that covered bodily injury and property damage occurring in the "coverage territory." The coverage territory included the "United States of America (including its territories and possessions), Puerto Rico and Canada...." While that clause alone may not provide the foreseeability required under World-Wide Volkswagen Corp., it is unnecessary to answer that question at this time.
Continental correctly points out that this is a case arising under the contract between Continental and B & B. In determining whether a substantial connection exists between the contract and the forum state, the United States Supreme Court explained in Burger King Corp., 471 U.S. at 479, 105 S.Ct. at 2185:
[A] "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors-prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing-that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.
(Citations omitted.)
In the instant case, the contract the parties negotiated provides coverage on a nationwide scale for a business that remanufactures and sells electrical transformers throughout the United States. The contract covered personal injury damages, among other things, and imposed a duty on Continental to defend B & B or to "pay those sums that the insured becomes legally obligated to pay as damages" which are caused by an "occurrence" that takes place in the "coverage territory." It is reasonable to assume that an insurer providing liability insurance investigates to some extent the type and degree of business it is insuring. B & B advertises that its business is interstate. It has area sales representatives stationed in multiple states, including Louisiana. The negotiated premium of the insurance contract surely took into account the fact that B & B conducts interstate business and that its products were being advertised throughout the United States, including Louisiana. Continental has thus received a benefit from Louisiana by receiving a premium on a policy of insurance that covers risks which are centered in Louisiana. Haling Continental into court in Louisiana would not be a result of some random, fortuitous, or attenuated contact, or by the unilateral activity of another party, but would in fact be directly related to the activity of Continental  i.e., providing interstate insurance coverage for business conducted in Louisiana. We find that Continental has purposefully availed itself of the privilege of conducting an activity within *904 Louisiana such that we can say that it has a "contact" with Louisiana.
Finding a "contact" is only part of the specific jurisdiction analysis. The cause of action must be one that also arises out of or is related to that contact. Aetna asserts a cause of action under rights assigned to it by B & B and the Oxleys. B & B caused damages in Louisiana and became liable to citizens of Louisiana. Continental refused to defend B & B contending that the policy did not provide coverage for the Oxleys' damage. Continental's "contact" with Louisiana was providing a policy of liability insurance allegedly covering a risk that was centered in Louisiana. Under that contract Continental agreed to defend and/or indemnify for damages in the coverage territory, including Louisiana. The cause of action asserted by Aetna is related to and arises out of an alleged breach of that agreement. Continental must have anticipated that if it failed in its duty to provide coverage in Louisiana for risks occurring in Louisiana, it would be haled into court in Louisiana to defend itself for the damages that arose in Louisiana out of that failure.

b. Reasonableness

While a showing that the exercise of jurisdiction in a particular case would be unfair to the nonresident may defeat a prima facie case for its exercise, a strong showing of fundamental fairness may serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would be otherwise required. Burger King Corp., 471 U.S. 462, 105 S.Ct. 2174; Teknika Electronics Corp. v. SES/LA, 95-663 (La. App. 3 Cir. 4/17/96), 673 So.2d 1129, writ denied, 96-1268 (La.6/28/96), 675 So.2d 1125; American Valve Mfg. Co. v. VIR, 28-942, 28-943 (La.App. 2 Cir. 12/11/96), 685 So.2d 1156, writ denied, 97-0120 (La.3/7/97), 689 So.2d 1378. There is a strong showing of fundamental fairness in this case.
It is neither unreasonable nor unfair to require an insurer who has agreed to defend its insured in Louisiana to defend itself when it refuses to provide a defense to its insured in a suit brought in Louisiana. Nor is it unreasonable or unfair to require that insurer to come to Louisiana to defend itself against payment of liability after the insured is found liable when the insurer fails to provide compensation.
Louisiana has a strong interest in providing an effective means of redress for its citizens when they are injured by others who are allowed to do business in Louisiana. Gulf Wide Towing v. F.E. Wright (U.K.), 554 So.2d 1347 (La.App. 1 Cir.1989). While in this case it is Aetna who is having to fight Continental for indemnity, it is not hard to imagine a situation where the injured party would be left to fight. For example, had the suit been simply Truman Oxley against B & B, and had Continental then refused to defend B & B or provide compensation to Truman Oxley, Truman Oxley, a Louisiana citizen, would possibly be left without an effective means of redress. Therefore, Louisiana has a very strong interest in requiring insurance companies to come to Louisiana to defend themselves for their failure to defend or indemnify, whether it is the Louisiana citizen, the insured, or an assignee of either party's rights who brings the suit.
The burden on Continental in defending this suit is not considerable. It has been established that Continental has already defended other insureds in the state. While it is true that Continental's defense in this case may require inconveniences different from and exceeding those attending the defense of an insured, since Continental may have to produce witnesses and evidence from its home office to refute Aetna's contentions that the contract covered the Oxleys' injuries, such interests rarely have been held to achieve constitutional significance, and they do not here. Compare Burger King Corp., 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528, to Asahi Metal Ind. v. Super. Ct. of Cal., Solano Cty., 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).
Also, while Iowa may be an alternative forum for this dispute, Louisiana will provide a forum at least equally efficient because the majority of litigation has already taken place in Louisiana. Just as Louisiana had a significant interest in litigating the personal injury action of Truman Oxley in the original suit, it and the other potential forum states have *905 an additional interest in pursuit of judicial economy in having this incidental claim resolved in Louisiana.
In addition, we believe there is an interest among the states in making sure that businesses providing nationwide insurance coverage are not allowed to reap the benefits of that business without also taking on the responsibilities that accompany it. If Continental wishes to benefit from risks centered in Louisiana, Continental must be responsible in Louisiana for those risks when they produce damages.
Our reasoning in this opinion is supported by many federal and state court opinions. See, for example, Domtar, Inc. v. Niagara Fire Insurance Co., 533 N.W.2d 25 (Minn. 1995), cert. denied, 516 U.S. 1017, 116 S.Ct. 583, 133 L.Ed.2d 504 (1995); Rossman v. State Farm Mut. Auto. Ins. Co., 832 F.2d 282 (4 Cir.1987); Payne v. Motorists' Mut. Ins. Companies, 4 F.3d 452 (6 Cir.1993); Farmers Ins. Ex. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911 (9 Cir.1990); Cronin v. Washington Nat. Ins. Co., 980 F.2d 663 (11 Cir.1993); Eli Lilly and Co. v. Home Ins. Co., 794 F.2d 710 (D.C.Cir.1986); and Southeastern Express Systems v. Southern Guaranty Insurance Company of Georgia, 34 Cal. App.4th 1, 40 Cal.Rptr.2d 216 (1 Dist., Div. 1, 1995).
It is reasonable to require Continental to come to Louisiana to defend itself for its failure to provide a defense to its insured for damages in Louisiana and to indemnify those who have paid for those damages in place of its insured. We have found no compelling reasons to the contrary. Fair play and substantial justice favor the assertion of personal jurisdiction over Continental in this case.

Decree
The trial court properly found personal jurisdiction over Continental Western Insurance Company in this case. Service of process was therefore proper. We affirm, assess the costs in this court to Continental, and remand for further proceedings.
AFFIRMED and REMANDED.