The SHAW GROUP, INC., a
Louisiana corporation

v.

NATKIN & COMPANY, a
Missouri corporation.

Civ. A. No. 95–446–B–M2.

United States District Court,
M.D. Louisiana.

Dec. 14, 1995.

Murphy James Foster, III, Steven B. Loeb, Breazeale, Sachse & Wilson, Baton Rouge, LA, for The Shaw Group Incorporation.

James S. Holliday, Jr., Baton Rouge, LA, for Natkin & Company.

## RULING ON THE DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER

POLOZOLA, District Judge.

This matter is before the Court on the defendant's motion to dismiss or, in the alternative, to transfer. For the reasons given below, the defendant's motion to transfer is granted.

### PROCEDURAL HISTORY AND BACKGROUND

This suit arises out of a subcontract entered into between Natkin & Company ("Natkin") and The Shaw Group, Inc. ("Shaw"), on November 16, 1993, in connection with a construction project at the Tennessee Valley Authority's ("TVA") Cumberland Power Plant near Clarksville, Tennessee. As one of the contractors that would actually construct the facility, Natkin was required, *inter alia*, to furnish and install certain rubber lined piping. In order to fulfill its responsibilities, Natkin hired Shaw to "furnish shop labor and materials to fabricate" certain carbon steel, rubber lined carbon steel and stainless steel piping.[1] The

---

1. Pl.'s Mem. Opp'n at 2; Def.'s Mem.Supp.Ex. A ("Scope of Work and Special Provisions Attach- ment").

subcontract did not require Shaw to install the piping, but related exclusively to the pipe's construction and delivery to Tennessee.

Shaw initially filed this suit in the Nineteenth Judicial District Court, Parish of East Baton Rouge, Louisiana, to recover the amount Natkin allegedly owes it for the work performed under the subcontract and for damages. Natkin timely removed this action to this Court on the basis of diversity jurisdiction. Thereafter, the defendant filed the pending motions.

In support of its motion to dismiss for improper venue, the defendant relies on 28 U.S.C. § 1406(a) and Rule 12(b)(3) of the Federal Rules of Civil Procedure and argues that the subcontract's forum selection clause is dispositive on the issue before the Court and requires the Court to dismiss the suit. Alternatively, the defendant suggests that this Court should transfer the action to the appropriate Tennessee forum pursuant to 28 U.S.C. §§ 1404(a) or 1406(a). The plaintiff argues that the parties' forum selection clause should not be enforced because such provisions are against Louisiana's public policy as expressed in Louisiana Revised Statutes 9:2779. In addition, the plaintiff opposes transfer on the basis of forum non conveniens.

## ANALYSIS

As an initial matter, the Court must determine whether 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a) controls the resolution of the defendant's motion. Section 1404(a) applies where both the original and requested venue are proper under federal law and provides for transfer of the action. In contrast, section 1406(a) applies only when the original venue is improper and provides for either transfer or dismissal of the suit.

The relevant portions of the federal venue statute provide:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated....

. . . .

(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.[2]

Because Natkin has had numerous business contacts with both the Middle District of Louisiana and the Middle District of Tennessee, venue is clearly proper in both fora.[3] Therefore, section 1406(a) is inapplicable on its face because this Court is not a court of improper venue. Since Natkin's motion to dismiss for improper venue is without merit, the Court must analyze the defendant's motion under 28 U.S.C. § 1404(a).

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

**2.** 28 U.S.C.A. § 1391 (West 1993 & Supp.1995).

**3.** The parties' forum selection clause designating that contractual disputes be heard by a court of "competent jurisdiction located in the State where the project is located" does not render this Court a court of improper venue. *See Stewart*

*Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 28 n. 8, 108 S.Ct. 2239, 2243 n. 8, 101 L.Ed.2d 22 (1988). *See also Walter W. Heiser, Forum Selection Clauses in Federal Courts: Limitations on Enforcement after Stewart and Carnival Cruise,* 45 Fla.L.Rev. 553, 592–93 (1993).

In *Stewart Organization, Inc. v. Ricoh Corp.,* the United States Supreme Court held that federal law, specifically section 1404(a), governed the district court's decision to transfer a diversity action to the venue provided for in the contract's forum selection clause.[4] In addition, the Court recognized that section 1404(a) endows district courts with discretion to decide motions to transfer on an individualized, case-by-case basis, in accordance with the standards established by that section.[5] Such standards include "the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.' "[6]

Thus, within the framework of a section 1404(a) analysis, the forum selection clause evidences the parties' preference regarding a convenient forum. Although such clauses are not dispositive, the *Stewart* court noted that their presence in a contract is a "significant factor that [should figure] centrally in the district court's calculus" of the above mentioned case-specific factors.[7] Since the forum selection provision is critical to the Court's section 1404(a) analysis, the Court will first examine that clause of the parties' subcontract.

The relevant language of the forum selection provision states:

> Any dispute involving solely Contractor [Natkin] and Subcontractor [Shaw] shall be determined by a court of competent jurisdiction *located in the State where the project is located.*[8]

The parties dispute whether the phrase "the project" refers to the construction project at the TVA's Cumberland Power Plant or to the construction of piping taking place at Shaw's facility in Prairieville, Louisiana. Despite the difficulty presented by use in the subcontract of the two terms—"the project" and "the Project"—the Court determines that a plain reading of the forum selection clause and subcontract indicates that the parties intended the term "the project" to refer to the construction project ongoing in Tennessee.[9]

Shaw's primary opposition to the defendant's motion is that the subcontract's forum selection clause should not be enforced because it runs contrary to Louisiana's public policy expressed in Louisiana Revised Statutes 9:2779. However, the Court need not decide whether the forum selection clause at issue is annulled by Louisiana law because the *Stewart* framework makes it unnecessary to address whether state law refuses to enforce such provisions.[10] As stated above, the forum selection clause is simply a factor, albeit significant, to be considered by the Court in its overall determination of the section 1404(a) motion.[11]

Both parties cite the Supreme Court's opinion in *M/S Bremen v. Zapata Off–Shore Co.*[12] to support their arguments. Although "instructive," the *Bremen* opinion does not control the matter before the Court.[13] For this Court's purposes, *Bremen* supports the prima facie validity of forum choice clauses and indicates that such provisions are to be

---

4. *Stewart*, 487 U.S. at 28, 108 S.Ct. at 2243.

5. *Stewart*, 487 U.S. at 29, 108 S.Ct. at 2244.

6. *Stewart*, 487 U.S. at 30, 108 S.Ct. at 2244.

7. *Stewart*, 487 U.S. at 29, 108 S.Ct. at 2244.

8. Def.'s Mem. Supp. Ex. A, section 13 at 6–7 (emphasis added).

9. *See* La.Civ.Code Ann. arts. 2045–2057 (West 1987) (regarding the interpretation of contracts under Louisiana law).

10. *See Stewart*, 487 U.S. at 30 n. 9, 108 S.Ct. at 2244 n. 9 ("Our determination that § 1404(a) governs the parties' dispute notwithstanding any contrary [state] policy makes it unnecessary to address the contours of state law.").

11. *See Stewart*, 487 U.S. at 31, 108 S.Ct. at 2244–45 ("Congress has directed that multiple considerations govern transfer within the federal court system, and a state policy focusing on a single concern or a subset of the factors identified in § 1404(a) would defeat that command."). *See generally Red Bull Assocs. v. Best Western Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir.1988) (focusing on federal public policy since a federal court provided the forum).

12. 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

13. *Stewart*, 487 U.S. at 28, 108 S.Ct. at 2243.

given significant weight as a legitimate expression of the parties' forum selection.[14]

Therefore, as outlined by the *Stewart* Court, the basic factors which must be considered by the Court are: (1) the convenience of the parties, (2) the convenience of the witnesses, and (2) the interest of justice.[15]

■ Although a Tennessee forum would likely prove more convenient for the defendant since it is the location where the construction project is ongoing, the first factor slightly favors the plaintiff since Natkin, a Missouri corporation, will have to travel regardless of whether the litigation is conducted in either Tennessee or Louisiana. Shaw, a Louisiana corporation, would naturally find it more convenient to litigate in the Middle District of Louisiana.

The convenience of the witnesses favors neither Louisiana nor Tennessee, as witness are scattered across the country. Thus, although slightly favoring Louisiana, neither of the first two factors significantly help either party because no matter which forum is chosen, the disappointed party will be saddled with some expense and inconvenience in bringing themselves and their witnesses to the site of the trial.

In the Court's opinion, it is the third factor which indicates that transfer to Tennessee is appropriate. In short, but for the forum selection clause, the Court would likely deny the motion to transfer. However, enforcing a parties' contractual obligations is exactly the type of consideration that falls within the "interest of justice" rubric.[16]

■ Although federal courts ordinarily accord a plaintiff's forum choice considerable weight,[17] the presence of a forum selection clause mandates a different analysis. In the *Stewart* case, following remand and a subsequent appeal, the Eleventh Circuit enforced the forum selection clause. It held that where the parties have entered into a contract which contains such a clause, the burden of persuasion to establish that the suggested forum is more convenient shifts to the non-movant since the moving party is not trying to limit the plaintiff's right to choose a forum, but is merely attempting to enforce the forum choice the plaintiff has already made.[18] The court reasoned that giving deference to the plaintiff's forum choice would encourage parties to breach their contractual obligations and thereby jeopardize the integrity of the judicial system.[19] In discussing the section 1404(a) analysis outlined by the Supreme Court, the Eleventh Circuit stated:

> [W]hile other factors might 'conceivably' militate against a transfer, the clear import of the Court's opinion [in *Stewart*] is that the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors.[20]

■ In the instant litigation, the forum selection clause was freely and fairly negotiated between the parties, both of which are experienced business corporations. The parties possessed relatively equal bargaining power. The choice of a Tennessee forum was entirely reasonable since the construction project was ongoing in that state. Thus,

---

14. See *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir.1995) (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. at 10, 92 S.Ct. at 1913).

15. The Court in *Stewart* added that the district court might want to consider the following factors on remand: "the convenience of a Manhattan forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power." *Stewart*, 487 U.S. at 29, 108 S.Ct. at 2244.

16. See *Stewart*, 487 U.S. at 33, 108 S.Ct. at 2245 ("[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.") (Kennedy, J., concurring).

17. See *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981).

18. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.1989).

19. *Ricoh*, 870 F.2d at 573.

20. *Ricoh*, 870 F.2d at 573 (citation omitted). See also *Stewart*, 487 U.S. at 33, 108 S.Ct. at 2246 (Kennedy, J., concurring) ("[A] valid forum selection clause [should be] given controlling weight in all but the most exceptional cases."). But see *Box v. Ameritrust Tex., N.A.*, 810 F.Supp. 776, 781–82 (E.D.Tex.1992).

the presence of the parties' forum selection clause tips the balance in favor of transferring this case to Tennessee. Although not controlling, the forum selection clause is dispositive in this case only because no other factors meaningfully tipped the balance in favor of Louisiana under the section 1404(a) analysis.[21]

Therefore:

**IT IS ORDERED** that the defendant's motion to dismiss be and it is hereby **DENIED.**

**IT IS FURTHER ORDERED** that the defendant's motion, in the alternative, to transfer be and it is hereby **GRANTED.**

---

**21.** Although Shaw argues to the contrary, a Tennessee forum is "available" because the parties' forum selection clause provides a sufficient basis for a Tennessee federal court to exercise personal jurisdiction over the plaintiff. *See Kevlin Servs., Inc. v. Lexington State Bank,* 46 F.3d 13, 15 (5th Cir.1995). *See also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985) (citing *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972)).